UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ERIC HENRY, )
)
          Petitioner, )
)
   v. )   Case No. 15-4205
)
KIM BUTLER, Warden, )
)
          Respondent. )

# ORDER AND OPINION

Now before the Court are Petitioner Henry's Petition (Doc. 1) and Supplemental Petition (Doc. 5) for Writ of habeas corpus under 28 U.S.C. § 2254. For the reasons set forth below, Henry's Petitions (Docs. 1, 5) are DENIED and the Court declines to issue a Certificate of Appealability.

### BACKGROUND[1]

*(1) The Murder and Henry's Trial*

The State of Illinois charged Eric Henry with first degree murder in the Rock Island County Circuit Court for the death of Katherine Pedigo in 2008. *People v. Henry*, 2011 WL 10468068, at *1 (Ill. App. 3d Dist. 2011). The case proceeded to a jury trial where Henry was convicted and later sentenced to natural life in prison. The facts of the investigation and trial are more fully recounted in the appellate court's opinion, but the Court will briefly summarize the facts relevant to the issues raised in Henry's Petition.

---

[1] The following facts and procedural posture relevant to Henry's § 2254 petition are drawn from the state court record. This Court will presume that the state court's factual determinations are correct for the purposes of habeas review as Henry neither contests them nor points to clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Kidd v. Lemke,* 734 F.3d 696, 703 (7th Cir. 2013).

1

In April of 2008, Eric Henry lived with his girlfriend, Becky Yaggie, in apartment 3 of a 4-unit apartment building at the corner of 4th Street and 16th Avenue in Moline, Illinois. Henry's codefendant, Gustavo Dominguez, lived in apartment 3, directly above Katherine Pedigo's residence in apartment 1. On the morning of April 20, 2008, Henry made three calls to 911 from a landline phone in his apartment. Henry first reported smoke in the apartment building and later reported that he found a dead female in a bathtub. When Moline police officers and firefighters arrived at the scene, they observed smoke coming from the building. Officer Eduardo Alaniz testified that he first talked to a female who lived on the first floor, then proceeded up the stairway where he encountered Henry and Gustavo Dominguez. Henry alerted the officer of a fire in the basement; Dominguez informed him of a female tied up in a bathtub. Dominguez then led the officer to the downstairs apartment where the deceased woman was located. Meanwhile, firefighters quickly extinguished two small, intentionally set fires in the basement. *Id.* at *1.

Pedigo was found dead in her bath tub. At trial, evidence was presented that Pedigo had abrasions on her forehead and bridge of her nose. She had multiple stab wounds, including 12 to her chest, 4 to her upper thigh, 20 on her back, and 13 to the back of her head and neck. She also had incised wounds to her thumb, neck, and vaginal area, and both of her lungs were punctured. It was impossible to identify which wound caused her death. *Id.* Amanda Coulter, Pedigo's sister, testified that she lived with Pedigo in apartment 1 for a short time and she was familiar with her sister's possessions, including a laptop, two gaming consoles, a cellphone, and several video games. After the murder, police allowed Coulter into her sister's apartment, where she recovered a set of keys that she recognized as her sister's. However, the keys would not unlock either of the apartment's doors and she was never informed that her sister changed the locks. *Id.* at *2.

Officer Greg Couch testified that he observed blood in the common foyer area of the building and on the steps leading to the apartments upstairs. Jasbir Hullon, the landlord of the building, testified that Henry and Yaggie originally rented apartment 3, but moved into apartment 4 earlier in April of 2008. The basement door was locked with a padlock that only Henry and Hullon had the keys to unlock (Henry had previously done some painting and repair work, including changing the locks, in apartment 1 prior to Pedigo's arrival, as he and Yaggie originally planned to move into that apartment.). *Id*. at *1–2.

Detective Brian Johnson also testified at Henry's trial. Johnson interviewed Dominguez at the police station. Officers found blood in the bathroom of the police station after Dominguez used the facilities, leading Johnson to obtain search warrants for Dominguez's person and his apartment. DNA testing of the blood samples taken from the bathroom floor and Dominguez's shoes matched Pedigo's DNA. Johnson also obtained Pedigo's cell phone number and pinged it to reveal its location. While searching for and calling the phone, Johnson heard vibrations emanating from a closet outside Henry's apartment. A search of the closet revealed a trash bag containing Pedigo's possessions. Henry admitted to handling Pedigos phone, which was also found inside the trash bag. Forensic testing of an iPod found in the trash bag revealed a mixture of DNA from which Henry could not be excluded. *Id*. at *3.

Detectives used luminol at the crime scene to locate blood traces not visible to the naked eye. The luminol revealed a blood trail left by two different pairs of shoes that went from Pedigo's apartment, out her kitchen door, and up the stairs of the complex to Dominguez's apartment. From there, the trail proceeded out the other door of Dominguez's apartment to Henry's apartment. When detectives sprayed luminol on the kitchen floor of Henry's apartment, the entire floor glowed, indicating that the floor may have been cleaned with bleach recently. *Id*.

3

Yaggie testified that Henry put the lock on the closet outside their apartment and she did not have a key to the closet. On Friday, April 18, 2008, she picked up Henry's paycheck and cashed it so she could pay bills. Henry called her anxious about when she would get home because she had his paycheck. When she arrived home, he asked her about the check and how much she had left. Yaggie gave him $30 and he left indicating he was going to purchase marijuana. Upon his return, he asked for more money to purchase more marijuana. Yaggie gave him $50 more, and when he arrived home the second time, he told her that Pedigo wanted him to put some weather stripping or a lock on her door. Henry went downstairs to Pedigo's apartment to see what she needed and returned 30 to 45 minutes later. *Id*.

Yaggie further testified that when Henry returned from Pedigo's apartment, he remarked that she had "a nice place, a lot of nice things." Yaggie recounted Henry's comment that "if he had that kind of stuff, he could pay off his bills, what he owed me and whatever," to which Yaggie responded by warning him to "[not] even think about doing something like that." Instead, Yaggie suggested that he quit buying dope and borrowing money. However, on April 19, Henry asked for more money to buy drugs, which she gave to him. Yaggie attempted to call Henry five or six times on April 19, but was not able to reach him until around 11 p.m. when he told her he was finishing off his dope and going to bed. *Id*. at *4.

On the morning of April 20, Henry called Yaggie and told her to call the landlord because there was a fire in the basement, but did not mention Pedigo's death. That night, Yaggie drove Henry to East Moline and dropped him off at a gas station. Henry said he was staying with a friend but did not indicate where. He later called Yaggie and told her it would not be a good idea for them to stay together. On April 21, Henry drove Yaggie and her client to Iowa. During the drive, the police called Yaggie and asked for her permission to search her apartment and the

4

closet outside. Henry told her not to tell the police he was with her. When the two returned to the apartment and the police asked again about searching the closet, Henry told Yaggie he did not know where the key was. *Id*.

Tisha Hare testified she dated Henry in October of 2007 and she still talked with him occasionally. Before his arrest, Henry called Hare and told her a murder and fire occurred at his apartment, that the police had a suspect, and that he was afraid he too would be a suspect. Hare also testified that a knife found in the victim's bedroom was similar to one Henry had shown her previously. *Id*. at *3.

Anna Shockley testified about her relationship with Henry in April of 2008, apparently at the same time he was dating Yaggie. Henry called Shockley multiple times on April 19 and at one point he stated "that he had done something stupid" and that he had broken into another apartment in the building and taken a laptop, iPod and cell phone. Henry told Shockley he had done a sloppy job at breaking into the apartment and he needed to go make it look like an outside job. He later went to Shockley's house, where she asked him if he was the one who murdered Pedigo. After Henry refused to answer, Shockley asked him to look her in the eyes and tell her he did not commit the murder, but he would not do so. According to Shockley, Henry "didn't say that he did do it, but the way that he was acting, the way he was looking at me, I could tell that he was lying to me." When she told Henry that he was guilty of the murder if he could not look her in the eyes and deny doing it, he did not respond. *Id*. at *4.

At the close of evidence for the prosecution, Henry moved for directed verdict, and his motion was denied. The defense called three witnesses to the stand. Detective Scott Williams testified that he searched a trash can at Henry's residence and found a paycheck stub for $180 inscribed with "Eric Henry roofing" in the note section of the check. Robert Slay testified that he

knew Dominguez to carry a pocket knife. He further testified that despite being friends with Dominguez, he did not trust him because he "caught him trying to steal a couple CD's" on occasion and he would not leave Dominguez alone with his belongings. William Reschley testified that he was a friend of Dominguez and gave him about $30 a week for four years. Finally, Henry recalled two police officers that testified in the prosecution's case-in-chief before resting.[2] *Id*. at *5.

The jury unanimously found Henry guilty of first degree murder and further found unanimously that the murder had been committed by exceptionally brutal and heinous behavior indicative of wanton cruelty. Henry's counsel filed a post-trial motion raising arguments including: (1) Henry was not proven guilty beyond a reasonable doubt, (2) the trial court erred in allowing his criminal history in as impeachment evidence, and (3) the trial court erred in ruling that the defense could not present evidence that Dominguez tried to access another person's home after Pedigo's murder. Doc. 21-4, at 14. Henry also filed five pro se motions for new trial, but the trial court decided that it would only address the issues that were also raised in counsel's motion. The trial court denied counsel's motion and sentenced Henry to natural life in prison. Meanwhile, Dominguez was found not guilty by reason of insanity in a separate bench trial. Henry appealed. *Id*.

*(2) Henry's Direct Appeal to the Third District Appellate Court of Illinois*

Henry, with the assistance of (different) counsel, filed a direct appeal to the Third District Appellate Court of Illinois. In his appeal, Henry argued that the prosecutor's remarks during closing arguments regarding the reasonable doubt burden of proof and the law of accountability

---

[2] The defense also moved to allow witness testimony and evidence relating to Dominguez's "other-crimes," which occurred after Pedigo's murder. That issue is discussed in the appellate court's opinion affirming the denial of Henry's postconviction petition. See *People v. Henry*, 2015 WL 127838 (Ill. App. 3d Dist. 2015).

6

entitled him to a new trial. The Illinois appellate court found no error in the prosecutor's remarks and affirmed the judgment of the trial court. *People v. Henry*, 2011 WL 10468068, at *5 (Ill. App. 3d Dist. 2011).

*(3) Henry's Petition for Leave to Appeal to the Illinois Supreme Court*

Henry filed a pro se petition for leave to appeal in the Illinois Supreme Court. Doc. 21-2. Therein, he raised a host of issues, including trial counsel's failure to seek a psychological evaluation for Henry. *Id.* at 4. The Illinois Supreme Court denied Henry's petition on March 28, 2012. Doc. 21-3; *People v. Henry*, No. 113736, 968 N.E.2d 85 (Ill. 2012).

*(4) Henry's Postconviction Petition*

On November 13, 2012, Henry filed a pro se postconviction petition arguing, *inter alia*, that trial counsel was ineffective for failing to request a fitness hearing, and appellate counsel was ineffective for failing to raise the issues contained in trial counsel's motion for new trial. Doc. 21-4, at 15. The trial court issued a written order summarily dismissing Henry's petition on the basis that he failed to state a constitutional claim. Henry appealed.

*(5) Henry's Appeal of the Denial of his Postconviction Petition*

Henry was appointed counsel to represent him on appeal from the trial court's denial of his postconviction petition. Counsel raised two issues on appeal: (1) whether Henry stated an arguable basis of a constitutional claim that trial counsel was ineffective for failing to request a fitness hearing; and (2) whether Henry stated an arguable basis of a constitutional claim that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred when it ruled that third party other-crimes evidence relating to Henry's codefendant Dominguez was inadmissible. Doc. 21-4, at 5.

As to the first issue, counsel stated the following in her appellate brief:

7

> In his *pro se* post-conviction petition, Eric Henry alleged that trial counsel "fail[ed] to hold a hearing on competency of the accused to stand trial or to be sentenced in this case." Henry claimed that counsel was "well aware" that he was on psychotropic medication and that he had been placed on suicide watch five times while in custody at the Rock Island County jail. He also stated that during the proceedings, he "exhibited behavior indicative of his imcompetence [sic] to make comprehensive decisions i.e., [s]uch as to the signing of a conflict waiver … whether to take a jury trial, testify, take a plead [*sic*] that was offered, or an absolute ability to understand the charges against him. Additionally, he claimed that he was "drowsy and in a[n] incoherent condition which rendered him incapable of making any comprehensive decisions." As supporting documentation, Henry attached his pre-sentence investigation report (PSI), which showed that while awaiting trial for the instant offense, he was treated by Dr. Robert Lawton of the Robert Young Mental Health Center, who diagnosed him with "intermittent explosive disorder" and prescribed Risperdal and Doxepin. The PSI also indicates that Henry had been prescribed Seroquel. Under the Illinois Supreme Court's decision in *People v. Brown*, 236 Ill.2d 175, 195-96 (2010), Henry has stated an arguable basis of a constitutional claim that trial counsel was ineffective for failing to request a fitness hearing, and the trial court's order summarily dismissing his petition should be reversed and the matter be remanded for further proceedings under the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2012).

Doc. 21-4, at 17–18 (citations omitted). As to the second issue, counsel stated the following in her appellate brief:

> Appellate counsel's failure to challenge the trial court's exclusion of third party other-crimes evidence relating to Henry's co-defendant was objectively unreasonable. During Henry's jury trial, trial counsel presented a theory of defense that Henry's co-defendant, Gustavo Dominguez, committed the charged offense alone or with someone other than Henry, and that at most, Henry received property that Dominguez took from the victim's apartment. To support this theory, counsel sought to admit evidence that several months after the instant offense, Dominguez attempted to gain entry into a woman's home. During an offer of proof, the arresting officer in the case testified that in September 2008, he was working the midnight shift and responded to a call from Rose Guyton, who said that she awoke to someone knocking on her door, and that the person jiggled the doorknobs of several doors of her residence. She gave a description of the man, and shortly thereafter, the officer located Dominguez and Guyton identified him as the offender. Additionally, another officer testified that a custodial search revealed that Dominguez was wearing women's underwear and had a pair of binoculars.

*Id*. at 25–26 (citations omitted).

The appellate court affirmed the trial court's summary dismissal of the petition. *People v. Henry*, 2015 WL 127838 (Ill. App. 3d Dist. 2015). As to Henry's first claim, the appellate court simply stated that "[t]his claim could have been raised in the direct appeal following trial, and the failure to raise it constitutes waiver of the claim for post conviction purposes." *Id*. at *2. In a footnote, the appellate court noted that Henry's "mental history was part of the record in the direct appeal following the trial (presentence report)." *Id*. at n. 3. As to his second claim, the appellate court reasoned,

> The State's theory in the instant case was that both Dominguez and defendant gained access to Pedigo's apartment and repeatedly stabbed her knowing said acts would cause her death. To explain the lack of forced entry, the State presented the theory that defendant had access/keys to Pedigo's apartment. Dominguez's jiggling of door knobs five months later does not create a logical inference that both crimes were committed by Dominguez alone. We agree with the circuit court's decision barring the evidence on the grounds that it was "too speculative and remote." Defendant's petition fails to state the gist of a constitutional claim.

*Id*. at *3.

*(6) Henry's Petition for Leave to Appeal to the Illinois Supreme Court*

Henry, again with the assistance of counsel, filed a petition for leave to appeal to the Illinois Supreme Court. Doc. 21-8. Therein, counsel argued as follows:

> This Court should grant leave to appeal to enforce the application of its waiver rule as applied to ineffective assistance of counsel claims that implicate matters outside the record and are raised for the first time in a *pro se* post-conviction petition. In this case, Eric Henry argued that under this Court's decision in *People v. Brown*, 236 Ill.2d 175, 195-96 (2010), he stated an arguable constitutional claim that trial counsel was ineffective for failing to request a fitness hearing. Henry stated in an affidavit attached to his petition that he was on psychotropic medication during the trial proceedings. As support for this claim, he cited to the presentence investigation report that showed he had been diagnosed with "intermittent explosive disorder" and prescribed Risperdal and Doxepin. Henry also claimed that during a November 2008 pre-trial hearing, the trial court asked if Henry was on "any type of psychotropic medication," and counsel responded, "No," despite being "aware" of his "mental health status."

> The appellate court rejected Henry's argument in one sentence.... The appellate

9

> court's finding of waiver contradicts this Court's long-standing rule that claims of ineffective assistance of counsel that are based on matters outside of the record cannot be raised on direct appeal and, therefore, must be raised in a post-conviction petition. *People v. Whitehead*, 169 Ill.2d 355, 372 (1996).
>
> Therefore, this Court should grant leave to appeal to clarify the limits on the ability of transcripts and documents *in* the record to positively rebut post-conviction claims of ineffective assistance of counsel based on facts *outside* the record. Alternatively, this Court should issue a supervisory order directing the appellate court to remand this case to the trial court for second-stage proceedings, consistent with *People v. Hodges*, 234 Ill.2d 1 (2009), and *People v. Tate*, 2012 IL 112214.…

Doc. 21-8, at 4 (parenthetical citations omitted). The Illinois Supreme Court denied Henry's petition for leave to appeal on May 27, 2015. Doc. 21-9; *People v. Henry*, No. 118992, 32 N.E.3d 676 (Ill. 2015).

*(7) Henry's Federal Habeas Petition*

On December 7, 2015, Henry filed the instant Petition (Doc. 1) and Supplemental Petition (Doc. 5) for Writ of habeas corpus under 28 U.S.C. § 2254. Therein, Henry raises the following issues:

(1) Henry's trial counsel was ineffective for failing to request a fitness hearing (Doc. 1, at 15);
(2) Appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred when it ruled that third party other-crimes evidence relating to Henry's codefendant was inadmissible (Doc. 1-1, at 1);
(3) Trial counsel was ineffective for failing to conduct a reasonable pretrial investigation into various aspects of Henry's mental health (Doc. 1-1, at 3);
(4) Trial counsel was ineffective (similar to grounds 1 and 3) (Doc. 1-1, at 6);
(5) The trial court erred in summarily dismissing Henry's postconviction petition (Doc. 1-1, at 7).

The Respondent filed an Answer wherein she asserts that each of Petitioner's claims have been procedurally defaulted and no grounds exist to excuse those defaults. Doc. 20, at 5–7. Henry filed a Reply. Doc. 24. This Order follows.

## LEGAL STANDARD

"Under the Antiterrorism and Effective Death Penalty Act ('AEDPA'), [a] federal court may grant a federal petition for habeas corpus only if the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' *Snow v. Pfister*, 880 F.3d 857, 863–64 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)). However, "[t]his 'deferential standard of review applies only to claims that were actually adjudicated on the merits in State court proceedings.'" *Snow*, 880 F.3d at 864 (quoting *Campbell v. Reardon*, 780 F.3d 752, 762 (7th Cir. 2015)).

In addition to the merits of a petitioner's claims, federal courts "must consider which claims have been procedurally defaulted." *Id*. There are two varieties of procedural default. First, procedural default occurs "where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements[.]" *Id*. (quoting *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)). In order for procedural default to apply in this circumstance, the state court's rejection of a federal claim based on a procedural rule must be "both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). Second, "[a] state prisoner can procedurally default a federal claim if he fails to 'fairly present' it 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Clemons*, 845 F.3d at 819 (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)). Thus, "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process," which in Illinois requires the petitioner to "include his claims in a petition for leave to appeal to the Illinois Supreme Court." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999)).

Finally, "[p]rocedural default may be excused ... where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Snow*, 880 F.3d at 864 (quoting *Thomas*, 822 F.3d at 386).

## DISCUSSION

Henry has set forth five separate claims in his Petition, but they can be readily distilled into two discrete claims. First, Henry alleges that his trial counsel was ineffective for failing to conduct a reasonable pretrial investigation into Henry's mental health and failing to request a fitness hearing. Second, Henry alleges that his appellate counsel was ineffective for failing to argue on direct appeal this the trial court erred when it ruled that third party other-crimes evidence relating to Henry's codefendant was inadmissible. Before reaching the merits of Henry's Petition, the Court must first determine whether Henry has procedurally defaulted his claims.

*(1) Henry Procedurally Defaulted his Ineffective Assistance of Trial Counsel Claim*

Henry's first claim is that his trial counsel was ineffective for failing to conduct a reasonable pretrial investigation into Henry's mental health and request a fitness hearing. Henry presented this claim in his pro se postconviction petition, which the trial court summarily denied for failure to state a constitutional claim. Henry, with the assistance of counsel, persisted with this claim on appeal. See Doc. 21-4, at 17–18. The appellate court affirmed the trial court's summary dismissal of the petition as to this claim because it "could have been raised in the direct

appeal following trial, and the failure to raise it constitutes waiver of the claim for post conviction purposes." *People v. Henry*, 2015 WL 127838, at *2 (Ill. App. 3d Dist. 2015). In a footnote, the appellate court noted that Henry's "mental history was part of the record in the direct appeal following the trial (presentence report)." *Id*. at n. 3. To support its finding of waiver, the Illinois appellate court cited *People v. Erickson*, 161 Ill.2d 82, 87 (1994). Respondent thus argues that the state court disposed of Henry's claim on an adequate and independent state law ground barring federal habeas review. Doc. 20, at 6.

Although it is not part of the record before this court, recall that appellate counsel summarized Henry's pro se postconviction petition as follows:

> In his *pro se* post-conviction petition, Eric Henry alleged that trial counsel "fail[ed] to hold a hearing on competency of the accused to stand trial or to be sentenced in this case." Henry claimed that counsel was "well aware" that he was on psychotropic medication and that he had been placed on suicide watch five times while in custody at the Rock Island County jail. He also stated that during the proceedings, he "exhibited behavior indicative of his imcompetence [sic] to make comprehensive decisions i.e., [s]uch as to the signing of a conflict waiver … whether to take a jury trial, testify, take a plead [*sic*] that was offered, or an absolute ability to understand the charges against him. Additionally, he claimed that he was "drowsy and in a[n] incoherent condition which rendered him incapable of making any comprehensive decisions." <u>As supporting documentation, Henry attached his pre-sentence investigation report (PSI), which showed that while awaiting trial for the instant offense, he was treated by Dr. Robert Lawton of the Robert Young Mental Health Center, who diagnosed him with "intermittent explosive disorder" and prescribed Risperdal and Doxepin. The PSI also indicates that Henry had been prescribed Seroquel</u>. Under the Illinois Supreme Court's decision in *People v. Brown*, 236 Ill.2d 175, 195-96 (2010), Henry has stated an arguable basis of a constitutional claim that trial counsel was ineffective for failing to request a fitness hearing, and the trial court's order summarily dismissing his petition should be reversed and the matter be remanded for further proceedings under the Post-Conviction Hearing Act.

Doc. 21-4, at 17–18 (citations omitted, emphasis added). It appears that the Illinois appellate court rejected Henry's ineffective assistance claim because the facts he relied upon for support—that he was taking psychotropic medication, that he was receiving mental health treatment, and

13

he had been diagnosed with intermittent explosive disorder—were part of the presentence investigation report and thus could have been raised on direct appeal.[3]

A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal citations omitted). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.' " *Id*. (citing *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). Moreover, the rule "must not have been applied in a manner that 'impose[s] novel and unforeseeable requirements without fair or substantial support in prior state law' or 'discriminate[s] against claims of federal rights.' " *Clemons*, 845 F.3d at 820 (quoting *Walker*, 562 U.S. at 320–21).

Here, the Illinois appellate court refused to adjudicate Henry's ineffective assistance of trial counsel claim because it was not raised in accord with Illinois' procedural default rule. In *Erickson*, the Illinois Supreme Court explained when a claim is properly presented for the first time in a postconviction petition.

> The argument glosses over the reason why the procedural bar properly may be relaxed given matters outside the trial record. The bar normally reaches to all matters that could have been—not merely were not—earlier raised. *Thus, the mere fact that support for a claim is contained in papers not in the trial record is largely immaterial. Reason to relax the bar occurs only when what is offered in the papers also explains why the claim it supports could not have been raised on direct appeal.*
>
> For example, the default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense. (See generally *People v. Hall* (1993), 157 Ill.2d 324, 336–37, 193 Ill.Dec. 98, 626 N.E.2d 131; *People v. Kokoraleis* (1994), 159 Ill.2d 325, 202 Ill.Dec. 279, 637 N.E.2d 1015; *People v. Owens* (1989), 129 Ill.2d 303, 308–09, 135 Ill.Dec. 780, 544 N.E.2d 276; see also *Perry v. Fairman* (7th Cir.1983), 702 F.2d 119, 122 (collecting Illinois appellate cases).) An ineffective-assistance claim based on

---

[3] The presentence investigation report does not mention Henry's purported suicide attempts. Rather, according to the report, "[Henry] denies suicidal or homicidal ideation plan or intent." See *Presentence Investigation Report*, Doc. 1-4, at 10.

> what the record on direct appeal discloses counsel did, in fact, do is, of course, subject to the usual procedural default rule. (See *People v. Kokoraleis* (1994), 159 Ill.2d 325, 202 Ill.Dec. 279, 637 N.E.2d 1015.) But a claim based on what ought to have been done may depend on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation. But see *People v. Jones* (1985), 109 Ill.2d 19, 23, 92 Ill.Dec. 552, 485 N.E.2d 363 (barring consideration of a claim of counsel's ineffectiveness for not presenting evidence which was included in the trial record).

*People v. Erickson*, 161 Ill. 2d 82, 87–88 (1994) (emphasis added). Consistent with *Erickson*, although Henry's ineffective assistance of trial counsel claim relies on "what trial counsel allegedly ought to have done …," *Erickson*, 161 Ill. 2d at 88, Henry's claim could have been raised in the direct appeal following trial because his mental history, i.e., the presentence report, was part of the record on direct appeal. Stated differently, Henry's postconviction petition and affidavit in support, while not part of the record on direct appeal, did not contain anything that explained "why the claim it supports could not have been raised on direct appeal." *Erickson*, 161 Ill. 2d at 87–88. Thus, the Illinois appellate court's rejection of Henry's claim rested upon a firmly established and regularly followed procedural rule. See, e.g., *Perry v. Fairman*, 702 F.2d 119, 122 (7th Cir. 1983) (collecting Illinois appellate cases). The rule was not applied in a manner that imposed novel or unforeseeable requirements, nor was it applied in such a way as to discriminate against claims of federal rights. *Clemons*, 845 F.3d at 820. Accordingly, Henry procedurally defaulted his ineffective assistance of trial counsel claim. See *United States ex rel. Cullars v. Lashbrook*, No. 16-11486, 2017 WL 3070758 at *5 (N.D. Ill. 2017).

*(2) Henry Procedurally Defaulted his Ineffective Assistance of Appellate Counsel Claim*

Henry also claims that his appellate counsel was ineffective for failing to argue on direct appeal this the trial court erred when it ruled that third party other-crimes evidence relating to Henry's codefendant was inadmissible. Henry raised this claim in his postconviction petition and in his postconviction appeal. *People v. Henry*, 2015 WL 127838 at *2 (Ill. App. 3d Dist. 2015).

15

However, he failed to raise the issue in his petition for leave to appeal to the Illinois Supreme Court. See Doc. 21-8. Therefore, Henry failed to " 'fairly present' it 'throughout at least one complete round of state-court review.' " *Clemons*, 845 F.3d at 819 (citing *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)). Accordingly, Henry procedurally defaulted his ineffective assistance of appellate counsel claim.

*(3) Henry Should not be Excused from his Default*

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Here, Henry asserts that the failure to raise his ineffective assistance of trial counsel claim on appeal was the result of his appellate counsel's ineffectiveness. Doc. 1, at 15–16. However, Henry did not raise this particular ineffective assistance of appellate counsel claim (regarding his fitness to stand trial) through "one complete round of the State's established appellate review process," and therefore cannot assert it as cause. See *Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). Similarly, Henry offers no explanation for abandoning his ineffective assistance of appellate counsel claim (regarding other-crimes evidence) in his petition for leave to appeal to the Illinois Supreme Court. See *Snow*, 880 F.3d at 865 ("Issues not raised in the [state supreme court] petition are not properly before the

court and are considered forfeited."). Thus, Henry has failed to establish cause for his procedural defaults.

Finally, Henry offers no coherent claim of actual innocence or that failure to excuse his procedural default would result in a miscarriage of justice. First, even construing his pro se Petition liberally, Henry is conspicuously silent about the effect a fitness hearing would have had on his case. Second, the presentence report Henry relies upon actually rebuts his competency claim. See Doc. 1-4, at 10 (noting that "thought processes are coherent and logical without evidence of a thought disorder" and he "denies suicidal ideation plan or intent"). Third, Henry had many opportunities to raise the issue when questioned by the trial court judge, but chose not to do so. See Doc 21-5, at 15. In sum, Henry offers no persuasive argument for excusing his procedural defaults.

### CERTIFICATE OF APPEALABILITY

Where a federal court enters a final order adverse to the petitioner, "the district court must issue or deny a certificate of appealability." 28 U.S.C. § 2254, Rule 11(a). To obtain a certificate, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a district court has denied a petition on procedural grounds, in order to obtain a certificate, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478. The Court declines to issue Henry a certificate of appealability because it is not debatable that Henry failed to preserve his claims in state court and, thus, forfeited his right to adjudicate those claims in a federal habeas court.

17

## CONCLUSION

For the reasons set forth above, Petitioner Henry's Petition (Doc. 1) and Supplemental Petition (Doc. 5) for Writ of habeas corpus under 28 U.S.C. § 2254 are DENIED, and the Court declines to issue a Certificate of Appealability.

This matter is now terminated.

Signed on this 23rd day of April, 2018.

s/ James E. Shadid  
James E. Shadid  
Chief United States District Judge